FILED
SUPERIOR COURT
OF GUAM

2024 OCT 15 PM 12: 03

CLERK OF COURT

BY:_____

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| THE ASSOCIATION OF APARTMENT OWNERS OF GUAM YAMANOI CONDOMINIUM, | CIVIL CASE NO. **CV0097-16** |
| Plaintiff. | |
| vs. | |
| | **DECISION & ORDER RE. PLAINTIFF'S VERIFIED MOTION** |
| GUAM YAMANOI INC., | |
| Defendant. | |

This matter came before the Honorable Alberto E. Tolentino on June 29, 2023, upon three motions filed by Plaintiff the Association of Apartment Owners of Guam Yamanoi Condominium ("Association"), and three motions filed by Defendant Guam Yamanoi Inc. ("GYI"). At the hearing, Attorney Thomas M. Tarpley, Jr. appeared on behalf of the Association, and Attorney Georgette Bello Concepcion appeared on behalf of GYI. Having duly considered the parties' briefing, oral arguments, and the applicable law, the court now issues the following Decision and Order on the six pending motions.

## BACKGROUND

### 1. Case History and Arbitration

The early history of this case is set forth in the Guam Supreme Court's opinion in *Ass'n of Apartment Owners of Guam Yamanoi Condo. v. Guam Yamanoi Inc.*, 2019 Guam 14 (hereafter, "Supreme Court Opinion"). In this case, there were disputes between the parties over

the management of a property they share in Tumon. *Id.* ¶ 2. The shared property includes a building with hotel space managed by GYI, and condominium space managed by the Association. *Id.* The relationship between the parties and the spaces they manage on the property is governed by a Horizontal Property Regime ("HPR"). *Id.*

In 2016, the Association filed suit, alleging GYI had violated the terms of the HPR by converting some of the hotel space into additional, unlicensed condominium units. *Ass'n of Apartment Owners of Guam Yamanoi Condo,* 2019 ¶ 4. GYI moved to dismiss based on section 11.E of the HPR,[1] which provides that "[a]ny controversy which shall arise between the parties regarding the rights, duties, or liabilities hereunder of either party shall be settled by binding arbitration." *Id.* ¶¶ 3, 5. The judge previously assigned to this case[2] granted summary judgment in favor of the Association without referring the matter to arbitration. *Id.* ¶ 7. GYI appealed and won. The Supreme Court found that the Superior Court erred by granting summary judgment instead of dismissing the Complaint or staying it pending arbitration, because the HPR's arbitration agreement was valid and applicable to the dispute. *Id.* ¶¶ 10–24.

Following remand from the Supreme Court, this case laid dormant while the parties arbitrated their initial dispute. The Arbitration Panel ("Panel") issued a Final Arbitration Award on August 11, 2022. Memo. in Supp. (Oct. 17, 2022). ("Final Arbitration Award"). Thereafter, the parties filed motions, six of which are addressed in this Decision.

\\

\\

---

[1] At prior stages of the case, including in the Supreme Court Opinion, this provision was typically cited as "Section 2.05.05" of the HPR. However, the Association points out that this citation is to a draft version of the HPR, not the final version. Reply Mot. supp. at 8 (Apr. 6, 2023). Although the Association concedes that citations to the draft version are "immaterial errors," the Court will nonetheless cite to the Final HPR. *Id.*

[2] The Guam Supreme Court issued an Order terminating Magistrate Judge Benjamin C. Sison Jr.'s appointment as Judge *Pro Tempore* and assigned the case to this court. Order (Sept. 13, 2021).

## 2. The Six Pending Motions

### A. GYI's Motion to Confirm and the Association's Motion to Vacate or Sever

GYI filed a Memorandum of Points and Authorities in support of its motion with the court to confirm the Final Arbitration Award. Memo. in Supp. (Oct. 17, 2022). In response to GYI's motion, the Association filed its own motion, requesting the Court to either vacate the Final Arbitration Award entirely or sever one portion of it. Pl.'s Mot. Vacate (Nov. 7, 2022). The Association argued that the Panel exceeded its authority by issuing a "tribunal directive" for the parties to negotiate compacts regarding further development of the property spaces. *Id.* at 2.

### B. GYI's Motion for Temporary Restraining Order RE: Utilities

The building on the property houses both the hotel and the condominium units with a single "master meter" for power and another for water. Memo. in Supp. (Nov. 17, 2022). Although the parties are jointly responsible for paying the building's utility bill, they dispute about precisely how this should work. On November 17, 2022, GYI filed a motion with court for a temporary restraining order, enjoining the Association from attempting to and disconnecting power and water to the hotel. *Id.* at 8. In this motion, GYI claims that the Association failed to provide GYI with certain worksheets showing the payments owed, which led to GYI being past due on utility payments. *Id.* at 6–8.

### C. The Association's Motion to File Supplemental Pleadings and GYI's Motion for Order Granting Sanctions

On March 3, 2023, the Association sought leave from the court under Guam Rule of Civil Procedure ("GRCP") 15(d) to file a Supplemental Verified Complaint, bringing new claims for declaratory judgment, breach of contract, and tortious interference with contractual relations. Pl.'s Mot. supp. (Mar. 3, 2023). The proposed claims also plead several new

defendants in addition to GYI: the Guam Power Authority ("GPA"), the Guam Waterworks Authority ("GWA"), individual defendant Makoto Yamanoi, and two Doe defendants. *Id.* On March 31, 2023, GYI filed an Opposition to the Association's Motion to File Supplemental Pleadings characterizing the Association's proposed claims as "beyond weak or unpersuasive and instead are sanctionably frivolous." Opp'n to Ass'n's Mot. (Mar. 31, 2023).

In line with its Opposition, GYI filed a Memorandum of Points and Authorities in support of a motion for order granting sanctions on April 5, 2023. GYI argues that the Association's motion is sanctionable under GRCP Rule 11 for two reasons. First, the Association should be sanctioned, because the proposed new causes of action are plainly within the scope of Section 11.E of the HPR and therefore must be arbitrated. Memo. in Support (Apr. 5, 2023). Second, GYI argues that the Association's proposed claim for tortious interference with contractual relations, could be to harass the individual defendants, some of which GYI suspects are its own attorneys *Id.* at 8. In the Association's Reply to GYI's motion, it admitted that this was true. Ass'n's Reply at 7 (Apr. 6, 2023).

**D. The Association's Motion to Determine Arbitrability**

On May 12, 2023, the Association filed a Verified Motion for this court to Determine the "Arbitrability" of a GYI Arbitration Demand ("Verified Motion"). The Association asserts that on May 5, 2023, GYI served on the Association a Demand for Arbitration of three claims purportedly arising under the HPR. Verified Mot. (May 12, 2023). The Association argues that none of GYI's claims are arbitrable, and that the court—not the arbitrators themselves—must make the threshold determination as to whether this is so. *Id.* GYI filed its opposition to the motion, arguing that the Supreme Court Opinion, as well as other Guam law, hold that the

arbitrators can and should determine the question of arbitrability. Opp'n Verified Mot. (June 19, 2023).

### E. The Motion Hearings

On June 15, 2023, the court held a motion hearing to discuss the pending motions with the parties who agreed that all pending motions except for the Association's Motion to Determine Arbitrability were fully briefed and ready for hearing. Mot. Hr'g Mins. (June 15, 2023). At the Association's request, the court continued the motion hearing to June 29, 2023. *Id.*

On June 29, 2023, the hearing largely involved untangling the pending motions where the issues raised in one motion bear on the issues raised in another. Mot. Hr'g Mins. (June 29, 2023). The court noted that all civil motions are automatically taken under advisement without oral argument 120 days after the motion is filed pursuant to Local Rule of the Superior Court of Guam, Civil Rule 7.1(e)(6)(F). *Id.* Under this rule, GYI's Motion to Confirm, the Association's Motion to Sever or Vacate, and GYI's Motion for TRO were already under advisement before the hearing began; and the other three motions were likely to reach that limit before the first three motions were decided. Without opposition from the parties, the court took all six motions under advisement simultaneously.

### DISCUSSION

### 1. The Arbitration Award is Confirmed.

As mentioned above, GYI requested the court to confirm the Final Arbitration Award under 7 GCA § 42A702. The statute provides, in relevant part:

> If the parties, in their agreement, have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon *the court must grant such an order unless the award is vacated, modified, or corrected* as prescribed in Sections 42A606 and 42A701.

7 GCA § 42A702(b) (emphasis added). "Unless there are grounds for vacating an arbitration award, such an award *must be confirmed* upon motion by the courts of Guam." *Antonio B. Won Pat Int'l Airport Auth. v. DFS Guam L.P.*, 2023 Guam 7 ¶ 22 (quoting *Guam YTK Corp. v. Port Auth. of Guam*, 2019 Guam 12 ¶ 30) (emphasis added). Therefore, the court starts its analysis from the presumption that the Final Arbitration Award should be confirmed; and the Association bears a "heavy burden" in arguing the contrary. *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).

The Association challenges the Final Arbitration Award's tribunal directive by ordering the parties to negotiate and finalize certain compacts regarding the development and administration of the property. Pl.'s Mot. Vacate at 2 (Nov. 7, 2022). The Association concedes that Section 11 of the HPR "authorize[s] and empower[s]" the parties to enter into such compacts, but asserts that the language of the HPR does not require the parties to do so. *Id.* The Association's reasons for conceding are: (1) the directive is impossible to perform; and (2) the arbitrators exceeded their limited authority in requiring the parties to enter into compacts. *Id.*

As a general rule, "judicial review of an arbitration award is extraordinarily narrow." *Gov't of Guam v. PacifiCare*, 2004 Guam 17 ¶ 16 (quoting *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002)). It is true, as the Association suggests, that an arbitral award may be vacated or modified where the arbitrators have exceeded their powers. 7 GCA § 42A701(b)(4). However, a court should refrain from doing so "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *PacifiCare*, 2004 Guam 17 ¶ 54. In other words, an arbitrator would exceed their powers "only if the arbitrator must have based his award on his own personal notions of right and wrong." *Asia Pac. Hotel Guam, Inc. v. Dongbu Ins. Co.*, 2015 Guam 3 ¶ 40 (citation omitted).

Here, the Panel found that the parties have been operating since 2003 under an unwritten agreement that "amounts to a de facto compact." Memo. in Supp. at 12 (Oct. 17, 2022). Section 11 of the HPR provides that "[a]ny compact between the Association and the Hotel must [] be in writing[.]" Thus, the tribunal directive is effectively a directive to reduce their agreement to writing, which is what the HPR contemplates. And the directive is not based on the Panel's personal notions, because it does not compel any particular result from the negotiations; it only directs the parties to negotiate. Accordingly, the court finds that the Panel was at least arguably construing or applying the HPR when it rendered this directive, so the Panel's decision will not be disturbed. GYI's Motion to Confirm is therefore **GRANTED**, and the Association's Motion to Sever or Vacate is **DENIED**.

**2. GYI's Motion for TRO RE: Utilities is Denied.**

GYI seeks a temporary restraining order to prevent the Association from attempting to and disconnecting power and water to the Hotel. Memo. in Support at 8 (Nov. 17, 2022). GYI asserts that certain utility invoices prepared by the Association state: "[e]ffective immediately! DISCONNECTION without notice after 60 days of non-payment from date of invoice." *Id.* Although GYI admits that "the Association has represented that the disconnection notice included in its invoices to the Hotel do not apply to the Hotel," GYI still asserts that the Hotel does not trust the Association after their past dealings together. *Id.* GYI also seeks attorney's fees incurred in connection with the temporary restraining order. *Id.* at 8–9.

"A TRO is simply a highly accelerated and temporary form of preliminary injunctive relief." *Greer's Ranch Café v. Guzman*, 540 F.Supp.3d 638, 644-45 (N.D. Tex. 2021). Despite the accelerated nature of TROs, GYI did not file an application to shorten time along with its motion requesting a TRO until December 29, 2022. At this time, GYI filed the application to

shorten time along with its Reply brief. CVR 7.1 Form 4 (Dec. 29, 2022). Because this court was indisposed at that time, the Honorable Dana A. Gutierrez heard the application on January 17, 2023, denying it based on the following finding:

> Based on the representations of Plaintiff and its counsel, the Court finds no immediate threat of Plaintiff shutting off the power and water. The Court notes that almost two months have passed since Defendant first requested a TRO and the power and water have not been shut off, which demonstrates that Plaintiff will adhere to its representation. Defendant presents no evidence that there is an imminent threat of Plaintiff shutting of the power and water. Likewise, Plaintiff and its counsel maintain that Plaintiff will not shut off the power and water. Consequently, the Court finds no sufficient justification for shortening time on this TRO.

Order at 4 (Jan. 17, 2023). This finding was based on the fact that the Association had not turned off the hotel's utilities, or attempted to, as of January 2023. And the parties represented to the Court that this remained the status quo at the hearing on June 29, 2023.

On a preliminary injunction, "the moving party must show both irreparable injury and likelihood of success on the merits." *Sule v. Guam Bd. of Examiners*, 2011 Guam 5 ¶ 9. To demonstrate irreparable injury, the movant must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." *Id.*

Here, GYI has not been able to show irreparable injury, and it does not appear that any such injury is forthcoming. As support, the Association set forth a declaration from Matt Johnson, one of the Directors of the Association, averring that the disconnection language in the invoices is "standard boilerplate" and that "[w]e understand that shutting off the power and water is [] hugely disruptive and we DON'T want to do it." Decl. Johnson at 3 (Dec. 15, 2022);

*see also* Decl. Bullock at 1 (Dec. 15, 2022). Presently, the court has not received further evidence that the Association was *likely* to shut off the hotel's utilities.[3] The Court finds that it is not likely that GYI will suffer irreparable harm unless the Temporary Restraining Order is granted. Therefore, GYI's Motion for TRO RE: Utilities is **DENIED**, as is GYI's request for attorney's fees.

### 3. The Association's Motion for Leave to Supplement and GYI's Motion for Sanctions are Denied.

Under GRCP Rule 15(d), the Association seeks leave of court to supplement its Complaint with five new claims: (1) Declaratory Judgment; (2) Breach of Contract (Power and Water); (3) Breach of Contract (Mailboxes); (4) Breach of Contract (Association Office); and (5) Tortious Interference with Hawthorne-Caterpillar Contractual Relations. Pl.'s Mot. supp. (Mar. 3, 2023). The first two proposed claims seek to plead new defendants GPA and GWA; and the fifth proposed claim seeks to plead new defendants Makoto Yamanoi and Jane Doe 1 & 2. *Id.* at 2.

The court may allow a party to file a "supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Guam Rules Civ. Pro. 15(d). Because this rule is directly derived from Federal Rules of Civil Procedure 15(d), interpretations of the federal equivalent are persuasive authority. *Lujan v. Calvo Fisher & Jacob LLP*, 2018 Guam 27 ¶ 11.

---

[3] The court recognizes that Fernando De Leon's Declaration avers that on January 4, 2023, Matt Johnson ordered him to shut off the power to certain hallway lights in the hotel and to the hotel's parking area. Decl. De Leon (Apr. 11, 2023). However, due to the interrelated nature of the property's utility structure, any effort to shut off the power to these spaces would also necessarily shut off the power to the Association's own hallway lights and parking area. *Id.* at 2. Thus, the court finds it unlikely that the Association will turn off the hotel's power, since this would also be harmful to the Association's share of the property.

As a general rule, motions for supplemental pleadings are generally favored where they would serve as "a tool of judicial economy and convenience." *Lujan*, 2018 Guam 27 ¶ 11 (quoting *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988)). A GRCP 15(d) motion should be evaluated with an eye to the "*Foman* factors" promoted by the U.S. Supreme Court. *Id.* ¶ 12 (citing *Foman v. Davis*, 371 U.S. 178 (1962)). The *Foman* factors are "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Arashi & Co. v. Nakashima Enter.*, 2005 Guam 21 ¶ 16 (quoting *Foman*, 371 U.S. at 182). If none of these factors are present, "leave [to file] should be freely granted." *Bautista v. Sholing*, 2017 Guam 17 ¶ 26.

"A motion to amend is futile when the complaint as amended would be subject to dismissal." *Lujan*, 2018 Guam 27 ¶ 13. Generally, this analysis should proceed as follows:

> When determining whether a proposed amendment should be denied as futile, a court must analyze the proposed amendment as if it were before the court on a motion to dismiss. In so doing, the court must accept as true all well-pleaded factual allegations, and view them in the light most favorable to the moving party. The court must then look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief.

*Id.* (internal citations omitted). GYI opposes the Association's Motion to Supplement, and bases its own Motion for Sanctions, on two counterarguments. First, GYI argues that the first four proposed claims are within the scope of Section 11.E of the HPR and must be arbitrated, not litigated. Opp'n to Ass'n's Mot. at 3–4 (Mar. 31, 2023). If these proposed claims are indeed arbitrable, they would be futile, because they would be subject to dismissal. *Adkins v. Labor Ready Inc.*, 205 F.R.D. 460, 465 (S.D. W. Va. 2001); *see also The Detroit Edison Co. v. Burlington Northern and Santa Fe Ry. Co.*, 442 F.Supp.2d 387, 394 (E.D. Mich. 2006). This is

consistent with the Supreme Court Opinion, which suggested that claims falling within Section 11.E should be dismissed, or else stayed pending arbitration. *Guam Yamanoi, Inc.*, 2019 Guam 14 ¶ 24.

Second, GYI argues that Proposed Claim 5 is brought for an improper purpose, i.e. "to harass and attack GYI's principal, Makoto Yamanoi, and GYI's female attorneys." Memo. in Supp. at 6–7 (Apr. 5, 2023). GYI concludes that the Motion to Supplement is frivolous and without legal basis. *Id.* at 8.[4] In GYI's view, these actions call for sanctions under GRCP 11 "in the form of attorney's fees . . . and an order that the Motion and its attached Supplemental Pleading be stricken from the record." *Id.* at 12.

### A. Proposed Claim 1 (Declaratory Judgment)

For Proposed Claim 1, the Association argues that this claim is not arbitrable for two reasons. For its first argument, the Association reasons that this claim is not arbitrable, because it pleads GWA and GPA as new defendants, even though they are not parties to the HPR and not bound by the arbitration agreement. Pl.'s Reply at 3 (Apr. 6, 2023).

The court agrees that the new parties are not subject to the HPR, but also notes that "parties to an arbitration agreement may not evade arbitration through artful pleading." *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 188 (Tex. 2007). Proposed Claim 1 only seeks a declaration that the utility accounts from these companies should be held in the Association's name. Pl.'s Mot. supp. at 6–7 (Mar. 3, 2023). There is no allegation that either GWA or GPA

---

[4] GYI briefly argues that the Association's lack of citation to either the Supreme Court Opinion in this case, or to *Calvo Fisher & Jacob LLP* is a violation of Guam Rule of Professional Conduct ("GRPC") 3.3(a)(1), which provides that "[a] lawyer shall not make a false statement of fact or law to a tribunal . . . ." Memo. in Supp. at 10 (Apr. 5, 2023). Because the court finds that neither case fully controls the outcome of this issue, failure to cite these cases does not rise to the level of a "false statement of law" demanding Rule 11 sanctions. *See United States v. Stringfellow*, 911 F.2d 225, 226 (9th Cir. 1990) ("The failure to cite relevant authority, whether it be case law or statutory provisions, does not alone justify the imposition of sanctions.").

GPA have an interest in the resolution of this question. Both GPA and GWA have taken no position on the motion, and there is no apparent reason why these defendants would care whose name is on the utility accounts. Decl. Tarpley at 1 (Apr. 6, 2023). The Association's pleading of additional defendants is not a basis to allow the Association to avoid arbitration with GYI on this claim. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983) ("an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.").

The Association's second argument as to why this claim is not arbitrable is that the issues relating to power and water distribution are not a subject specifically addressed within Section 11 of the HPR. Pl.'s Reply at 3–4 (Apr. 6, 2023). Because of this, disputes over the payment of utilities are outside the scope of the arbitration provision. The court finds this argument incompatible with the Supreme Court Opinion on this matter back in 2019. The Supreme Court was not persuaded by the Association's prior arguments that its claims were outside the scope of the arbitration agreement. *Guam Yamanoi Inc.*, 2019 Guam 14 ¶ 20 ("One of those rights [in the HPR] is the right to have an arbitrator—rather than the courts—resolve *any dispute between the parties*.") (emphasis added). Instead, the Supreme Court explained that Section 11 of the HPR should be interpreted broadly, with all doubts as to arbitrability resolved in favor of arbitration. *Id.* ¶ 22.

Interpreted broadly, disputes over the property's utilities would fall within Section 11.B.i, which discusses the relationship between the parties over the management of the building. As the parties have both stressed, there is one main power line to the building that houses both the hotel and the condominiums. The parties' dispute over control of the account for

this power line is considered a dispute over management of the building that falls within Section 11.B.i.

At minimum, the court cannot say "with positive assurance that the arbitration clause is not susceptible" to this interpretation. *Guam Yamanoi Inc.*, 2019 Guam 14 ¶ 13 (quoting *GHURA*, 2004 Guam 22 ¶ 31). Since the claim is within the arbitration clause, it would be futile to allow the Association to supplement their Complaint with this claim against GYI, since the claim would immediately be dismissed or stayed upon GYI's motion. To the extent that there could be a viable declaratory judgment claim against GPA and GWA independent of the arbitration of this issue with GYI, the Association is not precluded from filing a separate action to pursue declaratory judgment against the governmental defendants alone. Therefore, the court **DENIES** the Association leave to supplement their Complaint with this Proposed Claim 1 for Declaratory Judgment.

## B. Proposed Claim 2 (Breach of Contract (Power and Water))

Proposed Claim 2 is a breach of contract action, which appears to turn entirely on the resolution of Proposed Claim 1. "Should this Court find for Plaintiff in its First Claim for Relief herein, then Plaintiff's second claim for relief is for a judgment finding GYI has breached its contract with Plaintiff . . . ." Pl.'s Mot. supp. at 7 (Mar. 3, 2023). Since the Court denied Proposed Claim 1, it likewise finds against the Association on Proposed Claim 2, because it would also be futile to allow leave to supplement the Complaint with Proposed Claim 2. Therefore, the Court **DENIES** the Association leave to supplement their Complaint with this Proposed Claim 2 for Breach of Contract.

\\

\\

## C. Proposed Claims 3 (Breach of Contract (Mailboxes)) and 4 (Breach of Contract (Association Office))

For Proposed Claims 3 and 4, the Association concedes that the claims are within the scope of the arbitration provision. Although the Association argues that GYI has waived the right to arbitrate these claims by "unreasonably delay[ing] in undertaking the procedure," the Association appears to have abandoned this argument. Pl.'s Reply at 5 (Apr. 6, 2023) (quoting *Engalla v. Permanente Medical Group, Inc.*, 938 P.2d 903, 923 (Cal. 1997). In its Reply, the Association states that it "is willing to arbitrate claims 3 & 4, and therefore has recently served its Demand for Arbitration on GYI in accordance with HPR article 11.E." *Id.* at 6. Based on this representation, the court **DENIES** the Association leave to supplement its Complaint with Proposed Claims 3 and 4 for Breach of Contract.

## D. Proposed Claim 5 (Tortious Interference with Hawthorne-Caterpillar Contractual Relations)

Proposed Claim 5 is a claim for Tortious Interference with Contractual Relations ("TICR"), which is proposed against GYI and the three individual defendants. The claim is based on an alleged interference in the ongoing "customer service agreement" between the Association and a firm called Hawthorne-Catepillar ("HawthorneCAT") for the service of an electrical generator. Pl.'s Mot. File Supp. Pldg. at 10 (Mar. 3, 2023). The Association alleges:

31. In January 2023 HawthorneCAT declined to renew its Customer Service Agreement with the Association on the stated grounds that GYI through its attorney had contacted HawthorneCAT insisting that the Association has no authority to maintain the generator because it is "owned" by GYI when such maintenance was granted by GYI to the Association since 1990 and, further, by Defendant Yamanoi misquoting the Arbitration Award and its scope which did not address the generator or even mention it.

\\

\\

\\

*Id.* In its opposition, GYI notes that a plaintiff claiming TICR must allege:

> (1) the existence of a valid contract between the plaintiff and a third party.
> (2) the defendant's knowledge of that contract,
> (3) an act by the defendant intended to induce a breach or disruption of the contractual relationship
> (4) an actual breach or disruption of the contract, and
> (5) resulting damages.

Opp'n to Ass'n's Mot. at 8 (Mar. 31, 2023) (quoting *Lujan v. Girardi|Keese*, 2009 WL 5216906 *7 (D. Guam Dec. 29, 2009)). GYI argues that Proposed Claim 5 does not allege any valid contract between the parties and the Association; only a contract for the maintenance of a generator, which HawthorneCAT decided not to renew. *Id.* GYI also argues that there are no damages, because the Association incurred none. *Id.* In its Reply, the Association indicates that GYI "misunderstands the law of this tort," because Proposed Claim 5 states a valid tort claim under Restatement (Second) of Torts § 766B, "Intentional Interference with Prospective Contractual Relation." Pl.'s Reply at 7 (Apr. 6, 2023). Under the Second Restatement:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
> > (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
> > (b) preventing the other from acquiring or *continuing the prospective relation.*

Rest. 2d Torts § 766B (2024) (emphasis added). GRCP Rule 15(d) does not bar a party from pleading new defendants who "participat[ed] in the[] new events" into an action. *Griffin v. County School Bd. of Prince Edward County*, 377 U.S. 218, 227 (1964). However, GRCP Rule 15(d) cannot be used to introduce a "separate, distinct and new cause of action" into the original complaint. *Planned Parenthood of Southern Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997). In other words, where a new cause of action "could be the subject of a separate

action," a court is not required to grant leave to supplement. *Id.* (quoting Wright, Miller, & Kane, *Federal Practice and Procedure:* Civil 2D § 1509 (1990)); *In re Exxon Valdez*, 318 Fed.Appx. 545, 547 (9th Cir. 2009).

The court notes that this claim *as against GYI* also appears to be within the scope of the arbitration provision. Like Proposed Claim 1, this claim involves a power generator for the building and appears to concern the "management of the building" under Section 11.B.i. Therefore, Proposed Claim 5, *as against GYI*, must be arbitrated. *Guam Yamanoi Inc.*, 2019 Guam 14 ¶ 20 (recognizing the HPR confers the "right to have an arbitrator—rather than the courts—resolve any dispute between the parties."). On the other hand, this claim *as against the individual defendants* appears legally sufficient to proceed if the court accepts the Association's factual allegations as true. Because the individual defendants are not parties to the arbitration agreement, the arbitration agreement does not render this action futile as against them.

Here, the allegations in Proposed Claim 5 *as against the individual defendants* are entirely new from the specific allegations of the Complaint. The Complaint, which was made more than seven years ago, sought determinations of the Association's right to repair, GYI's liability for the costs of such repairs, and the Association's right to manage its particular share of the property (certain floors of the main building). Verified Compl. (Feb. 19, 2016). Those issues have now been fully resolved with the Final Arbitration Award. Proposed Claim 5, however, seeks a determination of a wholly new issue, and since the issue *against GYI* must be arbitrated, the court's action on that claim would proceed exclusively against new defendants. For these reasons, the court exercises its discretion to deny the Association's motion to supplement the complaint. This decision does not preclude the Association from filing its claims against the proposed new defendants in separate actions if it chooses. Therefore, the

court **DENIES** the Association leave to supplement its Complaint with Proposed Claims 5 for Tortious Interference with Contractual Relations.

### E. The Motion for Sanctions is Denied.

Under GRCP Rule 11, an attorney seeking sanctions must certify to the court that he or she "has made a reasonable inquiry and that the allegations in the complaint or other pleadings are well grounded in fact and 'are warranted by existing law." *PCI Communications Inc. v. GST Pacwest Telecom Hawaii, Inc.*, 1999 Guam 17 ¶ 13 (citations omitted). Consequently, sanctions may be imposed upon an attorney for filing pleadings "that are made to harass, that are frivolous, or that have no evidentiary support." *Gov't of Guam v. Gutierrez ex rel. Torres*, 2015 Guam 8 ¶ 46. Ultimately, GRCP Rule 11 "is designed to vest trial courts with wide discretion in sanction decision-making." *DFS Guam L.P. v. A.B. Won Pat Int'l Airport Auth.*, 2014 Guam 12 ¶ 29. As noted above, GYI moved for sanctions against the Association on two bases: frivolousness and improper purpose. Memo. in Supp. (Apr. 5, 2023).

With regard to the basis of frivolousness, the court does not find the Association's arguments so devoid of merit as to be frivolous, despite the court denying the Association's motion to supplement its pleading. A claim is sanctionable as frivolous only when it is "both baseless and made without a reasonable and competent inquiry." *Nateroj v. Haruyama*, 1992 WL 97207 *3 (D. Guam App. Div. Apr. 16, 1992); *see also Trans Pac. Exp. Co. v. Oka Towers Corp.*, 2000 Guam 3 ¶ 38 ("If, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time that the position is adopted, then sanctions should not be imposed."). Although the court finds the Association's position about the comparative narrowness of Section 11.E to be contrary to the spirit of the Supreme Court Opinion, it is not directly contrary to that opinion. The Supreme Court Opinion did not

determine precisely what subjects are within the scope of Section 11. While the court finds that its conclusion on the motion to supplement is ultimately compelled by the Supreme Court Opinion, "there is a significant difference between a weak or unpersuasive argument and one that is sanctionably frivolous." *DFS Guam L.P.*, 2014 Guam 12 ¶ 31. The Association's arguments belong to the former category.

With regard to improper purpose, the court finds that the evidence is insufficient to conclude that Proposed Claim 5 was brought solely for the purpose of harassing the individual defendants. As discussed above, Proposed Claim 5 appears to state a legally viable tort claim against the individual defendants. Because the court must accept the factual allegations as true, Proposed Claim 5 against the individual defendants cannot be deemed frivolous, because it may have legal merit. Therefore, the court cannot presently conclude that the only purpose of the claim was to harass the proposed individual defendants.

Even assuming the Association had dual (proper and improper) motives for Proposed Claim 5, this is not sufficient to support Rule 11 sanctions. *In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990) ("if a complaint is filed to vindicate rights in court, and also for some other purpose, a court should not sanction counsel for an intention that the court does not approve, so long as the added purpose is not undertaken in bad faith and is not so excessive as to eliminate a proper purpose."). Therefore, the court **DENIES** GYI's Motion for Sanctions against the Association.

\\

\\

\\

\\

### 4. The Association's Demand for Arbitration is Arbitrable.

On May 5, 2023, GYI served a demand on the Association to arbitrate three claims, which arose between the parties. Pl.'s Verified Mot. (May 12, 2023).[5] The Association now asks the court, rather than the arbitration panel, to determine whether these claims are arbitrable, and also provides substantive argument as to why it believes each claim is non-arbitrable. *Id.* In response, GYI asserts that the arbitrators themselves have the power to determine their own jurisdiction under 7 GCA § 42A401(a) and the Supreme Court Opinion as support; GYI also substantively argues that the claims are indeed arbitrable. Opp'n to Ass'n's Verified Mot. (June 19, 2023). This Motion therefore presents two distinct questions: *whether* the claims are arbitrable, and *who decides* that question.

### A. The Court Will Decide Arbitrability.

On the question of whether certain claims are arbitrable, there is a strong presumption in favor of arbitrability. "Any ambiguities regarding the question of 'whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement' are construed in favor of arbitration." *Guam Yamanoi Inc.*, 2019 Guam 14 ¶ 22 (quoting *GHURA v. Pac. Superior Enters. Corp.*, 2022 Guam 22 ¶ 31)); *see also Perez v. Monkeypod Enters.*, 2022 Guam 12 ¶ 22 ("As prior cases explain, we construe arbitration agreements broadly in favor of arbitrability."). But this same presumption does not apply to the question of who decides whether a particular dispute is arbitrable. *PacifiCare*, 2004 Guam 17 ¶ 27 ("The question of whether a claim or dispute is arbitrable is generally considered one for the courts, and not the arbitrators, unless the parties clearly and unmistakably reserved the question for the

---

[5]Although GYI withdrew these claims on May 12, 2023, it has refiled these same claims as counterclaims in a separate arbitration initiated by the Association. Reply at 1–2 (May 17, 2023); *see* Decl. Concepcion, Ex. B (June 19, 2023). For simplicity, this Decision and Order will continue to use the term "claims."

arbitrators."); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995). Although there is a presumption that particular claims are arbitrable, there is a contrary presumption that the question of arbitrability itself is not arbitrable.

Thus, the court must answer the "gateway question of who resolves the question of arbitrability." *Guam Yamanoi Inc.*, 2019 Guam 14 ¶ 18. The court first notes that the Supreme Court Opinion itself does not significantly treat this question, because neither party raised that issue before the Supreme Court. *Id.* Therefore, the court applies the *PacifiCare* standard: whether "the parties clearly and unmistakably reserved the question [of who decides arbitrability] for the arbitrators." *PacifiCare*, 2004 Guam 17 ¶ 27.

Section 11.E of the HPR provides that "[a]ny controversy which shall arise between the parties regarding the rights, duties, or liabilities hereunder of either party shall be settled by binding arbitration." The phrase "any controversy" is broad, which indicates that the inquiry of whether certain disputes are arbitrable should also be interpreted broadly. *Perez*, 2022 Guam 13 ¶ 16. But there is nothing in the HPR that explicitly provides who determines arbitrability. And unlike some cases, there are no contextual clues as to the parties' intention on that issue. *Guam YTK Corp. v. Port Auth. of Guam*, 2014 Guam 7 ¶ 26 (an arbitration agreement providing that questions of "enforcement" and "validity" must be arbitrated evinces the parties' intent that the arbitrator should decide questions of arbitrability); *see also DFS Guam*, 2023 Guam 7 ¶ 24 (an arbitration agreement which explicitly incorporates the American Arbitration Association Rules evinces an intent for arbitrators to decide arbitrability). Given the HPR's silence on the issue, the court finds that the HPR does not clearly and unmistakably reserve the question of arbitrability to the arbitrator. Therefore, the court must decide arbitrability.

\\

## B. Arbitrability of the Claims

The court now applies the strong presumption that the particular claims are arbitrable. *Guam Yamanoi Inc.*, 2019 Guam 14 ¶ 22. The court does so notwithstanding the Association's argument that the U.S. Supreme Court's decision in *Morgan v. Sundance Inc.*, 596 U.S. 411 (2022) has "watered down" the policy favoring arbitration in the context of the Federal Arbitration Act. While that may be true in the federal system, the Guam Supreme Court has not yet addressed whether or how the *Morgan* case applies to the interpretation of the Guam International Arbitration Chapter. Until the Guam Supreme Court changes positions, the court must continue to follow local precedent. *People v. Palomo*, 1998 Guam 12 ¶ 7 ("trial courts rule against precedent at their own peril. . . . The court in no way encourages the practice of ignoring precedent."); *see also Duenas v. Brady*, 2008 Guam 27 ¶ 17 n.4 ("prior applicable precedent usually must be followed even though the case, if considered anew, might be decided differently . . . .").

### (1) Claim 1 is not arbitrable.

The Association first argues that GYI's Claim 1 is not arbitrable, because this issue was already decided in the first arbitration. Pl.'s Verified Mot. 4 (May 12, 2023). GYI's Claim 1 provides:

> B. GYI "Claim 1: Pursuant to ¶ 11 of the Final HPR, the Hotel is to maintain and operate the *Pia Resort building and the property* . . . subject to contribution from the Association on the basis of the relative total square footage of the Hotel and the Association, without interference from the Association..."

*Id.* (emphasis added). The Association cites paragraphs 44 and 48 of the Final Arbitration Award to argue that the Panel has already determined that the Association manages its share of the building (the condominium units on floors 7 through 12); and the Hotel manages the rest,

and that each party's management of their respective share is "separate and independent of the other." *Id.* at 4. In response, GYI explains that Claim 1 only refers to the portions of the building "commonly used by or shared" between the parties, such as the lobbies and elevators. Opp'n Ass'n's Verified Mot. at 4–5 (June 19, 2023).

Under the Guam International Arbitration Chapter, when an arbitral decision is confirmed by the court,

> (f) The judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered.

7 GCA § 42A702(f). In other words, an issue finally decided in a prior arbitration and confirmed by the court has the same preclusive effect as an issue that was finally decided by the court directly. *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir. 1985); *see also FleetBoston Financial Corp. v. Alt*, 638 F.3d 70, 79 (1st Cir. 2011). Since the Final Arbitration Award is confirmed by this Decision and Order, the preclusive effect applies. Here, GYI's Claim 1—even accepting GYI's representation that the scope of the claim is limited to the "common areas" of the property—has been fully addressed by the Final Arbitration Award. Accordingly, there is no need to redetermine whether GYI is to maintain the common spaces with contribution from the Association; that issue is decided. Therefore, this claim is not arbitrable.

**(2) Claim 2 is arbitrable.**

Next, the Association argues that GYI's Claim 2 is not arbitrable for two reasons. First, Claim 2's is already before the court on the Motion to Supplement and involves third parties who are not parties to the arbitration agreement. Pl.'s Verified Mot. at 2 (May 12, 2023).

Second, Section 11 of the HPR does not extend to claims raised by GYI. *Id.* at 3. GYI's Claim 2 provides:

> Claim 2: Pursuant to § 11 of the Final HPR, the Hotel is to maintain and manage the power and water master meter accounts owned by the Developer, Guam Yamanoi, Inc., . . . subject to contribution from the Association on the basis of consumption, without interference from the Association.

*Id.* at Attach. 1 (May 12, 2023). This is fundamentally the same claim the court decided in Section 3(b)(i) above. Because the court previously found that this claim is arbitrable, the court reaffirms that finding here.

### (3) Claim 3 is arbitrable.

Finally, the Association argues that GYI's Claim 3 is not arbitrable, because this issue is already being arbitrated in another arbitration between the parties, which could lead to inconsistent awards. Pl.'s Verified Mot. at 4 (May 12, 2023). While GYI admits that this issue is indeed part of its counter-claim in another arbitration, it argues there is no danger of inconsistent awards, because the same arbitration panel would address both arbitrations. Opp'n to Ass'n's Verified Mot. at 7 (June 19, 2023). However, the Association appears to concede on this point in its Reply Brief. Pl.'s Reply Br. at 6 (June 28, 2023). Therefore, the court finds Claim 3 to be arbitrable due to the concession of both parties.

The court therefore **GRANTS** the Association's motion with respect to Claim 1, and **DENIES** the Association's motion with respect to Claim 2 and 3.

\\

\\

\\

\\

\\

## CONCLUSION

For the reasons set forth above, the court hereby:

- **GRANTS** GYI's Motion to Confirm;

- **DENIES** the Association's Motion to Vacate of Sever;

- **DENIES** GYI's Motion for TRO RE: Utilities;

- **DENIES** the Association's Motion to Supplement;

- **DENIES** GYI's Motion for Sanctions; and

- **GRANTS IN PART** and **DENIES IN PART** the Association's Motion to Determine Arbitrability.

**SO ORDERED** this ___**OCT 1 5 2024**___.



**HONORABLE ALBERTO E. TOLENTINO**
Judge, Superior Court of Guam